Case number 07-0266, People v. Laquita, Calhoun. Would both parties step up and identify yourselves for the record. Good morning, Your Honors. I'm Corin Bowser from the State Appellate Defender for Ms. Calhoun. I'm Assistant State's Attorney Mike Shalounis on behalf of the People. Have both of you argued here before? Yes, I have. This is your second one that I see. I think the first one that I saw was presumably your first argument. Although I must confess when I started trying cases, I somehow let the jury feel that my first four or five cases were my first ones. Good morning. Good morning. Good morning. Your Honors, today I would like to discuss why the imposition of consecutive sentences in the absence of a jury verdict that specifically lays out a specific mental state was a structural error that denied Ms. Calhoun her right to a jury trial. Well, basically, in other words, you're not going to be arguing the length of the sentence. What you're going to be arguing basically is Smith, Davis, and Moore. Is that right? Correct, Your Honor. I'd be happy to take questions. And there is an attempt to synthesize in Moore in a divided opinion between Justice Coleman and Justice Tice. And I think we're aware of that. So whatever help you can give us in digesting those cases is welcome. Certainly, Your Honors. I think to really understand the holding of the Smith case, we have to look at not only Smith, but the Davis case and subsequently the Glasser case. Well, aren't you hurt by the Davis case? Because the Davis case is where Justice Coleman seems to find her support that notwithstanding some of the more general language in Smith, that Davis pulls it back and makes it all dependent upon whether there's a request, which there wasn't here. Correct. And I think to answer that question, we have to look both at the Smith case and the subsequent decision in Glasser. The Davis characterization of the error in Smith was the fact that the trial court denied the request, the defendant's request. Now, the Smith holding was limited to situations where that request was made. However, Smith was merely addressing the question that was presented in that case. Both defendants, Smith and Titus, had made the request. The court in Smith wasn't necessarily called on to, you know, launch into a hypothetical about what would happen in the event. Yeah, well, that's why Smith has been arguably limited in its holding to only to cases where that is basically an argument in favor of requiring special verdicts, even though it's the same crime in the case of felony murder versus intentional or knowing murder. But it's not a case that necessarily supports the sua sponte requirement of a court to provide those special verdicts when they're not requested, although there's language in Smith that could lend itself to that. Well, certainly, Ms. Calhoun is not arguing that the court has any sua sponte duty. However, as Glasser has said. But you are arguing that here because there was no demand for special verdicts. And another thing that you also have to reconcile for us is since the theory of your appeal initially is ineffective assistance of counsel, how that plays against whatever independent rights the court may have. And I can be very specific in focusing you on that, if you like, because looking at Smith, Smith seems to indicate that there is no harmless error analysis where a request is demanded and not provided. Although, presumably, Justice Tyson, her dissent to Moore, seems to think that that's been abrogated by Davis, even though Davis would not, according to Justice Tyson, apparently be abrogating the requirement that the independent, that special verdicts be given sua sponte. But even if you have a harmless error problem when the appeal is originally based on that, what happens to the second prong of Strickland if it's predicated on ineffective assistance of counsel? And Justice Coleman does something with that. I'd like to hear about that. Certainly. Would you like me to address the ineffectiveness argument first, then? Well, whatever. I'm just putting in my order how you feel it is going to be up to you. Well, I think no analysis of Smith or Davis is complete without also looking at the subsequent post-Davis case of People v. Glasper, where the Supreme Court again addressed its holding of Smith. In Davis, the court said the error in this case was the trial court's refusal, so basically saying it was a situation where the error was an abuse of discretion. However, after that, in Glasper, the court says the error in Smith involved a basic fundamental protection of the Sixth Amendment right to have a jury decide the defendant's guilt, and they found it to be a structural error. Now, structural errors are errors that are so intrinsically harmful that they're subject to automatic reversal, such as the right to counsel, the right to self-representation, public trial, and the denial of a right to jury from the failure to give from a defective reasonable doubt instruction. And it was under that fourth area that the Glasper court said the error in Smith falls into this category. Now, Glasper deals with 431 admonitions. So this would be dictum? It's dictum. It's correct, Your Honor. However, you know, they were relying on Smith's own characterization of the error as harmless. Now, you know, the Smith court refused to conduct a harmless error analysis because they said this is, you know, the kind of error that, you know, denies you the right to a jury trial. Glasper, too, says the error in Smith denied the defendant a right to a jury trial. Neither of those cases discussed, you know, standards for a trial court or abuse of discretion. There's a jury trial here. The question is whether there's a jury verdict. Correct. Correct. So that error isn't merely was there an abuse of discretion. The error goes to the fundamental right to a jury verdict. So would you say, for example, that in that event it can't even be cured by a modification, by an adoption of the most serious correction, which would, as opposed to most serious offense, which would involve then the felony murder since that would permit the consecutive sentence, would that be permissible or would that mandate a new trial as far as you're concerned? Your question is if the verdict returned was so, I guess, Well, in this particular case, you get a single verdict and you have the preordained, the one good count rule, which is now, according to your position, being modified at least with respect to the instance where that one, so to speak, good count rule seeks the imposition of two separate sentences requiring different elements for each of those sentences. Now, in that event, if you have that, can this court or on remand the trial court simply modify that sentence, at least I don't want to use the word modified because for some reason that's a no-no in the cases, but eliminate the consecutive sentence or transmute that consecutive sentence into a concurrent sentence? I believe under Smith and Glasper it's required to. I don't think under Well, not if it's a structural defect. If it's a structural defect, then it's void. There's nothing to work with. I believe that in light of the general verdict form in this case, the fact that we can't tell whether this is the jury found intentional murder versus felony murder, the conviction for the underlying felony of kidnapping and the consecutive sentence are void, according to the Smith case, because we don't have a jury finding with respect to the mens reo, with respect to the intent. So the Davis case that, you know, characterized this error is May I ask a question here on that? You've raised this in the context of ineffective assistance, and looking at the second prong as far as prejudice, based on the evidence that was presented, in terms of her videotaped confession, the nature and manner of the death, all of the evidence considered, is there any question, can you establish that the outcome would have been different in the sense that a jury would have come up with this felony murder verdict when there was a clear statement on videotape about, you know, what she and what the others testified was done to the victim in this case? That could certainly show, without any question, forgetting intentional murder, but let's say knowing that the acts create a strong probability of death or grave bodily harm. Certainly, Your Honor. I would argue that actually our Supreme Court's decisions in Smith and Mack state that in this kind of situation where it's not possible to ascertain the actual jury verdicts, you have to presume prejudice because there is no actual finding to review. No, but that doesn't negate looking at the evidence in the case and considering what was presented here by the State in terms of the murder. I mean, I'm not sure you can say that a jury would have simply found, you know, kidnapping and therefore felony murder, based on everything that is in this record in terms of the other co-defendants, in terms of the videotaped statement. I think that there is a reasonable probability they may have simply found felony murder in this case. Based on what? What would you pull from the evidence to establish that prong of strictness? In this case, Ms. Calhoun, you know, gave a confession. She admitted that she participated in this kidnapping. You know, there was, she didn't say anything in her confession about, yeah, we meant to kill this guy. There was two witnesses who testified, oh, there were some plans that we were going to throw him in the lake, oh, we were going to kill him, but they drove around for hours. There didn't seem to be a specific plan. Both of those women actually stated at trial that that videotaped confession, the police asked them to say that, so they backed off and said no. Well, there was testimony here that they were planning to kill him from the get-go, plus the fact the car ran over this person twice. Hit him once, might have been inadvertent, but then came back and ran over him again. So intentional murder is well-esconced in the evidence. Not to mention all of the accountability evidence and the beginning of the sort of mob sort of situation where they tried to injure him, sodomize him with a broomstick. That's how it sort of all began, and then the frenzy continued. Incidentally, did you cite Glasper in your briefs? Glasper came down after the opening brief was filed. You didn't cite him in your yellow brief either. It's in my response brief. Did you raise it, did you file a motion to alert your opponents that you were going to argue Glasper? Fortunately, I happen to have read Glasper, but otherwise I would be somewhat remiss. Well, I do believe in the reply brief, it's not only cited to Glasper, but also argued that Glasper found this to be a structural error. So I do believe the state would be remiss. Did you cite to Glasper in your yellow brief? I don't recall seeing that there. Page 18. I stand corrected. Would you like me to get back to your question about the prejudice? Yes. I think that the most telling evidence in this case. Oh, you have it as a C also. That the most telling evidence in this case that the state wasn't even convinced they had a knowing and intentional murder, is the great lengths that they went to in closing argument to focus on the felony murder. You know, not only they were arguing this is a perfect example of felony murder. It doesn't matter whether you find that she wanted to kill this man. It doesn't matter whether she even wanted him to die. This is murder, felony murder, perfect example of felony murder. So, I mean, when a jury is faced with the state telling them this is felony murder, you don't even have to figure out whether she wanted this guy to die. It's reasonably likely that they faced with you can find... They had every right to argue that. Of course. They can argue that in any case. Your argument is that the felony murder theory was the most salient one for the jury to have acted upon. Right. It was the easiest one to find because it was easy to find the felony, so you didn't have to look for state of mind. Plus the fact that evidently the closing arguments spent time on felony murder. However, by the same token, the intentional murder is not ubiquitous. There is a lot of evidence to establish intentional murder. Incidentally, when you would specialize verdicts for the same crime, as opposed to having separate verdicts for separate crimes, do you instruct the jury to enter only one? Or are they allowed to sign off on all of them? Since they may find there's a felony, they may find it's knowing, they may find it's intentional. How do you handle that? I think that there would be no problem with giving three separate verdict forms and allowing them to return verdicts of guilty on each. Are they allowed to sign more than one verdict? Or are they going to be limited to only one? I think they could sign three. What would be the instruction if you want to get them to focus? This is either felony murder or not. How does the court direct the jury to that? So that the purpose of what you're seeking is demonstrated by the outcome. Right now, the jury gets instructions on all three. They just get to decide that with one verdict form. The instructions would be the same. Supposing they sign off on intentional murder and on felony murder, would the court then be free to impose a separate sentence for the felony based on the fact that it's also intentional murder? Absolutely. Logistically. Would the court be free to do that? Absolutely. In that case, we would have a jury finding of intentional murder. So your whole argument is based on the fact that when they sign a single verdict, you're not certain as to whether there was a finding of intentional. Correct. There's no way of knowing whether the court only found felony murder. And that's the reason the consecutive sentences are improper. This jury verdict doesn't make clear whether the jury found the requisite facts for the court to have the authority to impose a consecutive sentence in this case. And, you know, there's no reason why, you know. Your whole argument today, case-wise, is built on the dictum in Glassberg. Because there's no denying about the interplay between Davis and Smith. Right. And I would argue that, you know, my opponents and some of the other, you know, divisions of this court have relied on the dictum in Davis for their position that this is just a trial error. I mean, Davis wasn't actually addressing the question of whether consecutive sentences are warranted. Davis was addressing a question of, you know, the defendant in that case was attacking the entirety of the law. Well, harmless error is attacked by Justice Burke, not on the basis that it's structural in Smith, but on the basis that there's no verdict. Correct. So, again, Glassberg now comes up with a third theory. I don't think it's necessarily a third theory. I think that the Smith analysis that this is a harmless error and, you know, the Glassberg characterization of the error as a structural error both make clear that they don't think this is simply a trial error of an abusive discretion, which clearly would be subject to harmless error review, clearly is not a structural error. I mean, you know, a trial court abusing its discretion, we always review that for harmless error. So, I mean, both the refusal of Smith to conduct harmless error analysis and Glassberg's characterization that this is a structural error make clear that the error in Smith is a lot more than just counsel didn't object. Now what you're skipping is Davis. Davis. Well, the Davis, I mean, Glassberg came down subsequently. You know, I think they clarified in Glassberg what was really going on. But, again, Davis wasn't addressing, you know, this exact issue. Well, very close. I haven't analyzed it closely enough to agree with you that it's a dictament in Davis as opposed to part of the ratio of this identi. But if it is dictum, supposedly is it obituary dictum or just dictum? Well, I think some of the confusion, I think, with what the Smith court was actually holding comes from the fact that they limited their holding to, you know, the question in front of them. The fact that courts have said, oh, you know, Smith is limited only to situations where there is an objection by counsel doesn't logically follow necessarily without any legal analysis that, okay, that means when there is an objection, you know, there's no problem here. You know, looking at the actual legal analysis conducted in Smith that the question presented is how to interpret this jury verdict, that's the same question in this case. You know, the fact that the jury gets, you know, the court has this verdict in front of it and it doesn't know how to interpret it is the same regardless of whether the counsel objected. But then I'm sort of shuffling the deck a little more quickly than I would like to or you perhaps would feel more comfortable with. But we do have to move on. But I am concerned about how you interplay between the ineffective assistance argument and let's assume that it's structural error for the moment. And I'm not conceding that by any means. But if it is structural error, then the ineffective assistance of counsel, what happens to the second strickland prong in that analysis? Do you still view that in terms of did it prejudice the outcome? I don't believe that if you look at the Smith case and the Mack case, we can look at the weight of the evidence. In Mack, the court was addressing the question of the sufficiency of a death penalty versus the eligibility verdict. On direct appeal, the issue wasn't raised. Are you trying to raise it now independently as opposed to still staying with your initial argument of ineffective assistance? Absolutely. Well, what's the absolutely? That's like asking you which way do you want to go and you say this way or that way and you say yes. I think that this is a structural error based on Smith. Are you arguing that independently? Independently. Based on the law that was in effect at the time of this trial, the attorney So you're shifting gears. It's no longer an ineffective assistance of counsel argument? I'm talking about an effectiveness now. Pardon? I think we can analyze this problem under both. I believe that we can Are you raising an independent theory that the court erroneously, that the failure to provide a special verdict in and of itself voids this verdict, leaving counsel out of it? I'm raising an independent, not that the judge has Then that would require a plain error analysis since there was no objection. I have an independent argument that consecutive sentences are precluded when no verdict has been given. But there's no objection. There's no objection here. Did you make any plain error? Did you develop a plain error argument here? Well, I think the fact that the court has called this a structural error means Well, yeah, I understand that, but the question is how can procedurally, how, what is the procedural corridors that you've invited us to walk through? The fact that this has been called a structural error by the Smith court means that it certainly can be analyzed by this court under the second prong of plain error. The question, do we do that on our own as opposed, if you don't argue a plain error, can we, are you still saying that you expect us to treat this as a direct appeal based on a plain error concept when there's no mention in your briefs? And I'm not by any means attempting to criticize whoever drafted this, but right now it becomes a procedural problem as to how we are to proceed in this case. You've chosen an ineffective assistance of counsel theory. So our look that we get at the nature of this error is through the prism of ineffective assistance of counsel. Now you're saying that we can abandon that prism and look at it directly, but you haven't made a plain error presentation to us. Respectfully, Your Honor, we filed, I filed a supplemental brief in this case arguing this independent, you know, beyond the ineffectiveness. And in the reply brief, I, you know, argue that this court should consider this under the second prong of plain error because it was considered a structural error by the Smith court. So it was mentioned in the reply brief. You can't raise something for the first time in a reply brief. What page are you talking about in your reply brief? The plain error? Yes. 18. Let me just see what you say because, you know, you're not allowed to do that under the rules. I believe plain error can be addressed. You can't raise something in a reply brief. You haven't let your opponents write on the subject by raising it in your reply brief. They don't get the opportunity to respond in their brief to your arguments. That's the theory behind the fact that you can't spring surprises in your reply brief. Well, the basis for a lot of this argument in many of these cases came down while this was pending. Therefore, Grassley wasn't. No, no, no. Smith came down before you raised that in your white brief. And when you raised Smith, did you raise it in the context of plain error or in the context of ineffectiveness? Smith came down after the initial brief was filed by the defense. But it came down when you still had a white brief to file. We let you file the supplemental brief. Now, in your supplemental brief, did you bill the case under plain error for direct appeal or was it ineffective assistance of counsel? The white brief, it was plain error. This is a structural plain error. Well, I didn't see any plain error development in the supplemental white brief at all. Well, I believe, you know, the Glasper case came down after the filing of the supplemental brief. Yeah, but Glasper is a C also reference. You know, under the white book, there is a direct site, you know, where you don't say anything. There is a C site where you say C. And there is a C also and a CF. Where are the white book rules? A C also means it may be tangentially in point. And now it's become the crux of your argument. And it's raised in the white brief. You've presented us with some problems here. That procedural problems before we even get to the substance. Well, I believe that Your Honors can address this under the second prong of plain error. Could I just mention that in the reply brief, when you talk about plain error, I believe you're talking about the sentencing, aren't you? Maybe I'm wrong. On page 18. Yeah. That's going to the issue that was raised in the supplemental brief about this verdict, insufficient verdict forms not allowing the consecutive sentences. That is with respect to the supplemental brief. Whether you can raise something for the first time in a reply brief is basically prescribed by rule. But I do want to ask you, are you going to talk about this sentencing issue? Would Your Honors like me to discuss this? Well, I believe it's certainly a significant moment. Yes. Certainly, Your Honors. Ms. Calhoun's 60-year maximum sentence in this case was excessive. There were significant mitigating factors here. And the state argues that because this evidence was presented, we're required to presume that the trial judge did in fact consider all of it in the absence of something in the record to suggest that he did not. Well, in this case, the judge did say, I think the severity of the crime alone is enough to warrant the maximum sentence. I'm not going to consider your background. I think a comment like that is as close as you can get to a judge saying, no, I'm sentencing you solely on the severity of the crime. So not only was there evidence that Ms. Calhoun was acting under an extreme provocation at the time that this crime was committed, that's a sentencing factor that the court is required to consider pursuant to mitigating the statutory factor that's listed. In addition, the fact that there's evidence that could be a defense or to exonerate her but doesn't quite rise to that level is also listed in the statute as something that the court is required to consider. And you referred to a number of cases and other, I think, articles where the assault on a family member has been found to clearly be From other states. A factor that the court could consider in imposing sentence where it may not rise to the level of that defense, but certainly many courts have considered it in deciding what kind of a sentence to impose. I think the key issue in your argument on the sentence is, or the key effort is to separate the notion of voluntary manslaughter or second-degree murder from the notion of mitigation of the sentence. So that even some factors that do not rise to the level of reducing the murder to second degree, it still plays its part in mitigating the sentence. And I think that's a point that's well taken. I say that that's a softball because I want your opponents to respond to that since in their briefs there is some attempt here to intermingle both of those factors. And to add to that, the trial judge here called your client a vigilante and he doesn't like vigilantes and he seemed to possibly ignore the passions that would exist in a person who had a child that was sexually assaulted. Correct. And isn't that the type of argument you want to present to us? Yeah, correct. I mean, in that case, he is required to look at the fact that there was a serious provocation that Ms. Cunlhan was acting under. And not only did the court say, I'm not going to consider that, he used it as an aggravating factor, in fact, and said, you took justice into your own hands and you were a vigilante. Well, any time somebody is acting in response to a serious provocation, any second degree murder situation, they're responding. They're taking the law into their own hands. However, our law has recognized that there's a lesser state of culpability there. So, yes, Ms. Cunlhan is still guilty of murder, but there should be a mitigating factor considered at sentencing. And the judge simply refused to do it and, in fact, considered it as an aggravating factor. All the other individuals involved that were sentenced received 20 years. Isn't that correct? Correct. She was, although I don't know if they, I don't know there were trials. They were guilty, please. Yeah, there are two co-defendants. But she received the maximum sentence allowed. It was her child. It was her child, correct. All right. You'll be given time on rebuttal, but I think we have to move along. Exactly. Thank you, Your Honor. Give your opponents a chance to present their case. I would suggest to the state if that doesn't upset the procedures that you were, your entire organization, that you respond to the severity of the sentence first. Sure. Okay. Good morning, Your Honors. May it please the Court, I am Assistant State's Attorney, Micah Shalounis, on behalf of the people of the State of Illinois. With regard to the severity of the sentence, in this case, the judge did consider the fact that the defendant claimed that she was acting out of the alleged sexual assault of her child and committing the crime. Was there any question that subjectively she was, even if there might be a question as to whether this victim was the perpetrator of the abuse against the one-year-old child, was there any real question that in her mind he was? No, Your Honor. So if there isn't that question, then the distinction for purposes of a sentence is a very slim one because it's the state of mind of the actor, of the defendant, that counts rather than the actuality of the crime. Because the victim isn't on trial here, the defendant is, and is she acting as a mother who believes her child was abused by this victim in doing what she did? Your Honor, whether or not she believed that she was acting on behalf of her child, the fact is that this crime occurred over a significant period of time. It wasn't as if it was a crime. All within a day. All within a day. The trial court mentioned that. Why does that matter, that it occurred over the course of a day, if in fact the impetus for this offense was the belief that her child had been sexually assaulted by the victim? When your child was sexually raped. It was several hours that these people engaged in this act of, you know, murder upon the victim. Why does it matter that it took a few hours and somehow that makes it like evaporates the fact that she believed that he had sexually assaulted her child? It doesn't evaporate that, Your Honor, but it balances that against the fact that the victim was tortured and he was driven around in the trunk of a car while these women went to a liquor store, they got their flat tire on their car. Counsel, if a concentration camp victim meets a guard on the street and tortures the guard and kills the guard, should his crime or her crime be given any characterization or any consideration be given to the fact that this person believes that the person who was tortured and killed was the guard at the concentration camp who abused the perpetrator or the perpetrator's family? Should some consideration be given to that? Some, which can stretch from a little bit to a lot. Your Honor, I feel that the analysis with this particular hypothetical would be disingenuous because that causes a lot of... No, no, no, it's my hypothetical. I'm not saying that this is the case. And in my hypothetical, I control the facts, so you can't sidestep it. Absolutely. Then, yes, I believe that some consideration should be given in that particular... Now, did the court here, if a mother confronts a person on the street whom she believes to be the abuser of her child, and that mother subjects that victim to unjustifiable cruelty and death, should some consideration be given to that mother, that she is not doing it simply as an act of sadism, but under the belief that that victim was the rapist of her one-year-old child? Should some consideration be given to that? And some consideration was... Was some consideration given? Could the court have given more than 60 years? Didn't the court give her the maximum sentence? He did, Your Honor, and the consideration given for the defendant's impetus for the actions was weighed against the actions of the defendant herself. How did the court consider it? What language would you take from his sentence that would indicate to us that he gave any consideration at all to that? The fact that he stated that he was even understanding that the defendant was acting with the belief that her child had been sexually assaulted by the victim. When did he say that? He says that during sentencing. The trial court absolutely says that. No, I didn't call her a vigilante. He's saying that. He states... Vigilantes are those who take revenge in their own hands. Your Honor... So presumably, he's acceding to the fact that she was the mother, but is it justified? Your Honor, with all due respect, I'm not referring to that portion of his commentary during sentencing. No, but he's acceding to the fact that she was the mother of this child. Because that's embedded in the word vigilante justice. Vigilante justice means that she was punishing the victim on her own without due process of law. That's a vigilante. Yes, Your Honor, but with all due respect, the trial court did also state that even accepting the defendant's own belief that she was somehow acting in defense of her daughter, that she then proceeded to... It wasn't acting in defense of her daughter. She was acting... Let's not overcharacterize. She was acting to avenge her daughter. To avenge her daughter. Which was a criminal act. There's no question. Yes, Your Honor. Why was this the most horrendous crime he had ever seen when it came to Miss Calhoun, but it was a minimum sentence for the other two? Three, Your Honor, and Terrence Jones was actually sentenced to more than 20 years. However, it probably was that way with Miss Calhoun, and it was because she was the only perpetrator who was present from the beginning of the offense to the end of the offense. Well, that's not... He doesn't say anything like that in his sentencing. She recruited the other people. She recruited them, or she said something that caused another woman to say, he did this to my child, too, and then the other fellow gets involved with the broomstick. I don't know that she was rounding up a posse. She actively sought out Nevon Foster, Your Honor. She went to the police station and turned herself in. She gave a videotaped confession. She told in her confession how she felt that this man had sexually assaulted her child. So, I mean, this is not the kind of person that's not even remorseful. Immediately she goes to the police station. She's not arrested. So I'm just saying, I don't see how the court considered any of this when he gave the maximum. What is the point, then? How do you get to consideration when... All right, just here's the question. How do you get to consideration of factors when you give the maximum? Because the maximum sentence was the proper sentence when weighed against the factors and the defendant's actions. She did not turn herself in to more than six weeks after the crime occurred. She never took her daughter to the hospital to be examined after the murder occurred, even though she purported this sexual abuse. Counsel, what was her level of literacy and general intelligence quotient? Is there any evidence on that? There is, Your Honor. Because one of her fellow defendants was found by this court to have been incapable of understanding the Miranda warnings. Correct, Your Honor. Laquita Calhoun, the defendant in this particular argument, had made it through the 11th grade at Englewood High School, which she states. Laquisha Collins had actually enrolled in college at the time. So there is evidence that these defendants absolutely were aware of what they were doing. Laquita stated that she dropped out of high school due to her first pregnancy. But there is also evidence that the defendant in this case, she waited the six weeks. It wasn't as if she went to the police station and turned herself in immediately following the commission of this crime. However, the statute in providing factors in mitigation explicitly says, the following grounds shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment. And one of them, Item 3, is defendant acted under strong provocation. Is that present here? Strong provocation? Your Honor, the provocation, if any, was in the defendant's mind herself. There is nothing to suggest that it wasn't. Is that strong provocation or isn't it? I would suggest in this case it's not. It's probably as strong as it ever gets, right? Your Honor, that would leave us to believe that any defendant that suggests they have a reason for committing their crime that's contained within the boundaries of their own mind would legitimize that crime. If it is a pretextual provocation, you're right. But is there anything in this evidence that would indicate that that belief was anything other than sincere? And also, is there evidence in this case that would indicate that, for whatever weight that carries, that the defendant was the culprit? At least she testified that he confessed. I'm perhaps misunderstanding the characterization of being a culprit. I do believe that the belief was insincere because prior to going to confront the victim in this case, the defendant did go and request the counsel of her sister and the co-defendant, Ms. Daniels, before she actually confronted the victim with this. Well, wouldn't that seem to indicate that when she consults her sister that she is convinced that he did it? Isn't that what she consulted her sister about? She didn't consult her sister about the involvement of the victim, no. She consulted her sister about whether or not the child looked normal in terms of her genitalia. Yes. And then it was also brought out that Ms. Calhoun has two other daughters, and so she herself would have some basis of knowledge for her. Well, that's right. She was a mother. She had very little, if any, criminal background in terms of convictions. I know there were some misdemeanors. There might have been some sort of drug offense. Okay. But, you know, there were multiple mitigating factors that it doesn't appear the court even looked at. And, I mean, I don't know that the suggestion that there was some sort of an assault is just a completely made-up allegation. I mean, apparently all of these people were acting under that same sort of belief. Let's continue with a couple of other factors concerning this. Your argument to us is that the trial court considered the, you know, the subjective manifestation that was in the defendant's mind. Isn't that your argument, that the court considered that? Yes, Your Honor. All right. But when you say that, the court said that this is not a heat of passion situation. It's rather vigilantism. So when you say that, the court is saying he's not considering that. So how do you get around that? Because, Your Honor, he goes on to later state that even assuming that the defendant held some sort of justifiable belief that she was acting in response to her daughter's purported sexual assault, that an aggravated criminal sexual assault against a child wouldn't warrant death. She did not stand there with her friends over the course of five hours and the result of the pummeling. She actively went out and recruited the father of the other children after the father of that child refused to become involved, dragged him into the scenario, and then got him to drive around with her, get the flat tire fixed in the car, and then run over the victim with the car. Four times in her own statement, two times according to the contradictions between the statements that she gave. The first one being accidental, the second one being intentional. So you're basically telling us that there's a parallax here. Looking through one eye, we find a mother avenging the abuse of the child being treated as if she is the world's most likely candidate for a maximum sentence. On the other hand, the other parallax is to look at the manner in which she commits the crime. And this court evidently made very little effort in interweaving the two to see how a mother under strong provocation can become very excessive and very vengeful and carried away in the manner in which she commits the crime. Now, is there no possibility here of reconciling the two and forming a sentence that reflects both as opposed to giving this woman the maximum of 60 years as if the provocation didn't count at all? Your Honor, I believe the court, as I stated before, did consider it. He did weigh it. And it just weighed. And rejected it. He gave it no weight because it's not reflected in the sentence. That doesn't necessarily mean, Your Honor, that he gave it no weight. It just means when weighed against the other factors that he considered, it did not weigh as heavily as the other factors. The statute also says that the mitigating factors include that the defendant's criminal conduct was the result of circumstances unlikely to recur. And that's, I don't think, very disputable here. This is not, we're not dealing with a criminal with a long rap sheet. We're dealing with a woman who had some misdemeanor marijuana convictions or whatever at some point. Your Honor. And also that there were substantial grounds tending to excuse or justify defendant's criminal conduct, though failing to establish a defense. The heat of passion defense may fail here. And I frankly don't know why both sides decided to give up on that defense. Because I think, I argue, at least there was an argument to be made, that this was still heat of passion. But be that as it may, the mitigating factor still remains, even if the heat of passion defense fails. Anyway, I think I'd better turn you to the next section. We've, I think when I called it a parallax, I think you know that I haven't bottom-lined your position. I understand, Your Honor. Okay. Turning to the first issue, consecutive sentencing rising to the level of structural error. This issue was raised by the defendant in their opening brief under the framework of an ineffective assistance of counsel argument. As such, the defendant cannot show that trial counsel's behavior was either the result of deficient performance or that it was prejudicial to the defendant. In this case, the defendant's theory of the case, her defense was that she acted in provocation for the purported sexual abuse of her child. As such, what she's seeking is a not guilty verdict on intentional murder. To provide the jury with a specific verdict form alleging felony murder, which would lend itself to a strict liability conviction, would make no sense on behalf of defense counsel. It would water down their own defense theory of the case, and what it would do is provide the jury with an easy out for perhaps those members of the jury that were not convinced that she was acting in serious provocation for the purported sexual. So there was a significant trial strategy in this case? I believe so, Your Honor. All right. So what about the second problem? Prejudice to the defendant? Yes. Well, there was significant evidence, again, presented that the defendant did behave intentionally in her actions. From calling Yvonne Foster to get him involved, to the cuts that were found on the defendant's face, one of which almost severed his ear, to repeated statements to her sister about the defendant, that she wished the victim to die before she put him into the trunk of the car. Well, so what you're – would you say it's stronger to argue that this lawyer was not ineffective because he did, or she, I'm not certain, but they did request the second degree, they did present this serious provocation of the defendant's belief that her child had been sexually assaulted, that there's really no way you could call this lawyer ineffective because the strategy was certainly reasonable? Absolutely, Your Honor, and that is the people's position that not only was the behavior objectively reasonable, but it was the defense's best strategy in this case. And, again, a specific verdict form for felony murder in this case really would not have benefited his client at all. While it would have reduced the potential sentencing to concurrent sentences, it would not have afforded him a not guilty verdict because the defendant never denied that she kidnapped the victim. To impose a sort of strict liability offense on kidnapping would have rendered a virtual immediate guilt. Do you think that the defendant in this case is entitled to have us hear this as a direct appeal as opposed to an appeal for ineffective assistance of counsel, that the defendant is entitled to have us consider the propriety in the first instance of this court for not sui sponte providing the separate, the special verdict form to this jury without getting into the merits of that position? Do you think procedurally that the defendant is entitled to have us consider this case as a direct appeal from the failure of the court rather than counsel to provide a special verdict? No, Your Honor, because that's not the way that the argument was structured. It wasn't even the claim that was raised in the brief. And even in the supplemental brief, it's broached as a due process argument based on the sentencing scheme. It has nothing to do with rising consecutive sentencing based on a general verdict form to the level of structural error. Do we have the power to do so if we choose? No, Your Honor, it can't be briefed. Do you think we're restricted? Well, the Supreme Court recently issued an opinion where they said that the reviewing court shouldn't start looking at errors that haven't been properly presented. Correct. Is there anything else? No, Your Honor. Thank you very much. Thank you. For these reasons and those contained in our brief, we'd ask that you affirm the defendant's sentences and convictions for both first-degree murder and kidnapping. Will two minutes be too much for you, counsel? But you could take less. First,  the State's argument is basically he did consider it as he was entitled to because he did weigh it. To the contrary, the court flat-out rejected that this could even be considered in mitigation. He, again, considered her vigilantism as an aggravating factor, said you are not the judge, jury, Ms. Calhoun. He didn't consider it in mitigation. I don't know that he was aware. He was required to consider it in mitigation. He considered it in aggravating. Counsel, you may not want to use up your entire two minutes on that because I think we can kind of navigate on our own pretty well. I would also just like to discuss the State's claim that this was trial counsel's best strategy, that the only thing that could happen here was that she was going to get an additional seven years. Well, there's no strict liability if separate verdict forms are given. The jury is still given instructions that they can find her guilty of felony murder for this general murder verdict form. Counsel's failure to object and request separate verdict forms virtually guaranteed is fine. It was going to get consecutive sentences. That's not a trial strategy. I think the State's argument that, you know, kind of assumes that the jury is going to not follow its instructions and still find her guilty of felony murder using the general form. And we make the presumption that juries do follow their instructions. Other than that, I believe your honors can get to the merits of the fact that this was a structural error because of the fact that a structural error constitutes a second pronged plain error. It was addressed in the reply brief after the Glasper case came down and said this is a structural error. So I think you can reach the merits of that issue. Thank you. This case was well argued with great fortitude and will be carefully considered and taken under advice.